UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
—————————————————————————

DAVID M. LUCK,

                 Petitioner,

        V.

WILLIAM PHILLIPS,

               Respondent.

—————————————————————————

**REPORT AND
RECOMMENDATION**

04-CV-1001
(LEK/VEB)

## I. INTRODUCTION

Petitioner David Luck, acting *pro se*, commenced this action seeking habeas corpus
relief pursuant to 28 U.S.C. § 2254. Petitioner is an inmate at the Green Haven Correctional
Facility. In 2001, he was convicted in a New York State court of Assault in the Second
Degree and Burglary in the First Degree. Petitioner contends that his conviction was
imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue,
Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is
presently before this Court for a report and recommendation. (Docket No. 19).

## II. BACKGROUND

**A.     Facts**

The following factual summary is derived from the state court records. On June 11,
2000, following a dispute over the custody of their children, Petitioner assaulted his ex-
girlfriend, Lisa Garramone. Garramone and Petitioner had multiple disagreements earlier

in the day concerning the same issue. (T at 487-88).[1]   When Garramone returned to her trailer that night, she noticed the doors were unlocked and the shades were down, which was not how she had left it.  (T at 489-94).  She put her children to sleep on the couches in her trailer and went to her bedroom to change into her night clothes.  (T at 495). Garramone went to her kitchen to get a drink, and when she turned around she saw Petitioner running toward her.  (T at 496).  She tried to run away, but Petitioner dragged her by her head through the living room, past her children, who had awoken.  (T at 497). Petitioner then carried Garramone into the bathroom where he punched her in the face until she fell to the floor and he threatened to kill her.  (T at 498).  Petitioner proceeded to kick her as she lay on the floor.  (T at 499-501).  Petitioner then had sexual intercourse with Garramone.  (T at 502).  When he stopped, she asked him to call for help for her, and he agreed as long as she claimed it was an intruder who had beaten her and not him.  (T at 503).

Garramone was taken to the hospital and treated for multiple broken ribs, a fractured eye orbital, a separated shoulder, and a broken tooth.  (T at 507-08). A warrant was obtained for Petitioner's arrest and on October 7, 2000, he was arrested in Clearwater, Florida.  (T at 697-709).

Thereafter, a Greene County Grand Jury returned Indictment Number 2000-113, which charged Petitioner with Assault in the Second Degree, Burglary in the First Degree, and Rape in the First Degree.

---

[1]References preceded by "T" are to the transcript pages of Petitioner's trial.

**B.     State Trial Court Proceedings**

The Honorable George J. Pulver, Jr., Greene County Court Judge, presided over Petitioner's trial proceedings.   The trial began on March 7, 2001. Petitioner was represented by Dennis B. Schlenker, Jr., Esq.  At the conclusion of the trial, the jury found Petitioner guilty of Assault in the Second Degree, in violation of New York Penal Law ("NYPL") §120.05(1)[2] and Burglary in the First Degree, in violation of NYPL § 140.30(2). (T at 874).  Petitioner was found not guilty of the charge of Rape in the First Degree.  (T at 874).

On April 10, 2001, Petitioner was sentenced as a second felony offender to a determinate term of seven (7) years imprisonment on the assault count, and a concurrent determinate term of  twenty-five (25) years for his conviction on the burglary count.  (S at 4-5, 14-15).[3]

**C.     State Appellate Proceedings**

**1.     Direct Appeal**

Petitioner, represented by Catherine Barber, Esq., appealed his conviction to the Appellate Division, Third Department, of the New York State Supreme Court.  Petitioner asserted four arguments before the Appellate Division: (1) the evidence was legally insufficient to establish First Degree Burglary; (2) evidence of prior bad acts was improperly admitted at trial; (3) the trial court erred in refusing to charge the lesser included offense of

---

[2]Unless otherwise indicated, all references to the NYPL are to McKinney 1998.

[3]References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings.

Third Degree Assault; and (4) Petitioner received an excessive sentence.

In a decision issued on May 2, 2002, the Appellate Division affirmed Petitioner's conviction.  People v.Luck, 294 A.D.2d 618 (3d Dep't 2002).  Petitioner's application for leave to appeal to the Court of Appeals was denied on July 18, 2002. People v. Luck, 98 N.Y.2d 699 (2002).

### 2. §440.10 Motion

On October 1, 2003, Petitioner, represented by Edward R. Hammock, Esq., brought a motion pursuant to Criminal Procedure Law ("CPL") § 440.10 to vacate the judgment of conviction entered against him on the basis of Brady[4] and Rosario[5] violations as well as ineffective assistance of Petitioner's trial counsel.  On February 27, 2004, Judge Pulver denied Petitioner's motion pursuant to CPL § 440.10 (2)(c), finding that his claims were procedurally defaulted because they had not been raised on direct appeal.  Judge Pulver also found that Petitioner did receive Rosario materials, and his trial counsel used information from those materials on cross-examination. Therefore, the trial court found no violation of Petitioner's right with respect to those materials.  Petitioner applied for leave to appeal the trial court's decision to the Appellate Division, Third Department, which denied leave on July 14, 2004.

### 3. Writ of Error Coram Nobis

On August 5, 2004, Petitioner filed a *pro se* petition for a writ of error coram nobis. Petitioner asserted that he was deprived of effective assistance of appellate and trial

[4]Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

[5]People v. Rosario, 9 N.Y.2d 286 (N.Y. 1961).

4

counsel.  On October 7, 2004, the Appellate Division, Third Department denied the petition. Petitioner's application for leave to appeal to the Court of Appeals was denied on December 29, 2004.  People v. Luck, 4 N.Y.3d 746 (2004).

### D.  Federal Habeas Corpus Proceedings

Petitioner, proceeding *pro se*, commenced this action on August 23, 2004, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1). On February 4, 2005, Petitioner amended his petition in compliance with an order signed by Judge Lawrence E. Kahn, United States District Judge.  (Docket No. 5, 7).

Petitioner asserts four grounds for relief in his Amended Petition: (1) his right to effective assistance of appellate counsel was violated when obvious issues were omitted from appeal; (2) he was denied effective assistance of appellate counsel when appellate counsel failed to raise Brady and Rosario violations on appeal; (3)  he was denied effective assistance of appellate counsel for appellate counsel's failure to raise the issue of the prosecution's failure to provide the defense with Rosario material regarding Petitioner's uncharged crimes; (4) he was denied effective assistance of appellate counsel when appellate counsel failed to raise the issue of ineffective assistance of trial counsel on appeal. (Docket No. 7).

On September 29, 2005, Respondent filed a Response and memorandum of law in opposition.  (Docket Nos. 13).  Respondent asserts that this Petition is untimely as well as meritless.  Petitioner filed his Traverse on January 23, 2006.  (Docket No. 16).   For the reasons set forth below, the Court recommends that the petition be DISMISSED.

## III. DISCUSSION

**A.    Federal Habeas Corpus Standard**

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under  AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim."  <u>Sellan</u>, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  <u>Id.</u> at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Both AEDPA and its predecessor statute recognize that a presumption of correctness

shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), and AEDPA requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by both state trial and appellate courts. Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.      Petitioner's Claims**

      **1.      Statute of Limitations**

            **a. Timeliness**

Because the instant Petition was filed after the enactment of the Anti-terrorism and

Effective Death Penalty Act ("AEDPA") on April 24, 1996, it is subject to a one-year statute

of limitations that runs from the latest of the following four events:

> (A) the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by
> State action in violation of the Constitution or laws of the United States
> is removed, if the applicant was prevented from filing by such State
> action;
>
> (C) the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly
> recognized by the Supreme Court and made retroactively applicable
> to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due
> diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

For Petitioner, like most habeas petitioners, Section 2244(d)(1)(A) sets the

applicable starting point for the one-year period of limitations-that is, "the date on

which the judgment became final by the conclusion of direct review or the expiration

of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).   Petitioner's

application for leave to appeal to the New York Court of Appeals was denied on July

8

18, 2002.  People v. Luck, 98 N.Y.2d 699 (2002).

His conviction therefore became final ninety (90) days later, on October 16, 2002, the date his time to file a petition seeking a writ of certiorari from the United States Supreme Court expired. See Williams v. Artuz, 237 F.3d 147, 150-51 (2d Cir.), cert. denied, 534 U.S. 924, 122 S.Ct. 279, 151 L.Ed.2d 205 (2001). Not taking into account statutory tolling, Petitioner therefore had one year, until October 16, 2003, to timely file his habeas petition in the district court.

AEDPA's one-year limitations period is, however, statutorily tolled during the pendency of a properly-filed application for state post-conviction relief. 28 U.S.C. § 2244(d)(2); see Acosta v. Artuz, 221 F.3d 117, 119 (2d Cir.2000). Here, Petitioner, represented by counsel, filed his C.P.L. § 440.10 motion to vacate the conviction on September 29, 2003.[6]  Therefore, Petitioner had seventeen (17) days remaining before his one year period expired.

The statute of limitations, accordingly, was tolled during the pendency of Petitioner's  C.P.L. § 440.10 motion beginning on September 29, 2003. The C.P.L.

---

[6]This Court notes that Petitioner's motion was dated September 24, 2003, however, the affidavit of service attached to the motion is dated September 25, 2003.  The affidavit of service asserts that the motion is being mailed to the Greene County Clerk's Office on that date.  Respondent asserts that according to the Greene County Clerk's Office, the motion was not received until October 1, 2003 and was filed that same day.  September 25, 2003 was a Thursday, therefore, the earliest the clerk's office would have received the motion would have been the following Monday, September 29, 2003.  In his Traverse, Petitioner asserts that the motion was in fact filed on September 29, 2003, and urges the Court to use the September 29, 2003 date.  (Docket No. 16, p. 4 fn. 1).  Because there is no apparent documentation in the file to establish that the motion was in fact received and filed by the Greene County Clerk's office on October 1, 2003, the Court will give Petitioner the benefit of the two days and calculate the timeliness of this Petition from the September 29, 2003 date.

It should further be noted that Petitioner is not entitled to the benefit of the "mailbox rule" because he was represented by counsel in his CPL §440.10 motion.  The "mailbox rule" applies to pro se and incarcerated habeas petitioners, where the petition is deemed filed on the date it is given to correctional authorities for mailing to the court.  Houston v. Lack, 487 U.S. 266, 270 (1988).

§ 440.10 motion was denied and Petitioner's leave to appeal that denial was also denied several months later on July 14, 2004, by the Appellate Division, Third Department.

Therefore, Petitioner's §440.10 motion ceased to be pending[7] on July 14, 2004 and he had seventeen (17) days, until July 31, 2004, to timely file his habeas petition or his writ of error *coram nobis* petition.

Petitioner filed his *pro se* writ of error *coram nobis* petition on August 5, 2004, which was five days after the statute of limitations period had expired for filing a petition for habeas corpus or a writ of error *coram nobis* petition, which would have further tolled the period for the filing of the habeas petition.[8]  However, because both his writ of error *coram nobis* petition and petition for habeas corpus relief were filed after July 31, 2004, the petition is untimely.

**b.      Equitable Tolling**

The one-year period set forth in AEDPA for the filing of federal habeas petitions is a statute of limitations, not a jurisdictional bar. Smith v. McGinnis, 208 F.3d at 17.  Consequently, the period can be equitably tolled if a petitioner is able to show that extraordinary circumstances[9] prevented him from filing his petition earlier

---

[7]The word "pending" designates the "end point" of the tolling period, Fernandez v. Artuz, 402 F.3d at 116, and "an application for state review is 'pending' until it has achieved final review through the state's post-conviction procedures." Foster v. Phillips, No. 03 Civ. 3629, 2005 WL 2978686, at *4 (S .D.N.Y. Nov. 7, 2005) (citing Carey v. Saffold, 536 U.S. 214, 220, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002)); accord, e.g., King v. Cunningham, 442 F.Supp.2d 171, 180 n. 15 (S.D.N.Y.2006).

[8]As noted above in footnote 6, this calculation gives Petitioner the benefit of presuming that his §440 motion was filed on September 29, 2003.

[9]"Extraordinary circumstances" are events which were "beyond [petitioner's] control" and which prevented successful filing during the one-year time period.  Smaldone v. Senkowski, 273 F.3d 133 (2d Cir. 2001).

and that he acted with reasonable diligence throughout the period sought to be tolled. Id.  In his Traverse, Petitioner argues that it was (1) his appellate counsel's failure to timely file his petition for a writ of error *coram nobis* and (2) the Department of Correctional Services prohibited him from working in the law library, which prevented him from filing the application in a timely manner.

### 1.      Appellate Counsel's Failure

Petitioner asserts that he wrote to his appellate counsel with respect to filing a writ of error *coram nobis* petition.  (Docket No. 16, Exhibit 1-B).  In his letter dated April 2, 2004 to his attorney, he advised his attorney that he wished to file a writ of error *coram nobis* as well as a habeas corpus petition and that the deadline in which to do so was approaching. (Id.).

On April 14, 2004, Petitioner's appellate counsel then wrote back to him stating that he had no intention of filing a writ of error *coram nobis* because the chances of succeeding were, in his opinion, "terribly slim."      (Id.).   Therefore, Petitioner had notice when he received the April 14, 2004 letter hat his attorney did not intend to prepare a writ of error *coram nobis* petition on his behalf, which left Petitioner more than enough time to prepare the petition himself before the statute of limitations period expired.  Petitioner was not required to file with the assistance of an attorney and did not need to wait before filing his *coram nobis* petition.

Even assuming *arguendo* that Petitioner's attorney's performance in this matter constituted "extraordinary circumstances", Petitioner is not entitled to equitable tolling because he was not reasonably diligent in filing his *coram nobis* or habeas petition. (Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) ("If the

11

person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing.").

In this case, as noted above, Petitioner's appellate counsel advised him that he did not plan on drafting a writ of error *coram nobis* petition in April of 2004, leaving Petitioner over three months to file his writ of error *coram nobis* petition and/or the instant habeas petition before the time period ran out.  Accordingly, equitable tolling is not warranted based on appellate counsel's alleged failure to prepare Petitioner's writ of error *coram nobis* petition.

### 2.  Access to Law Library

Petitioner also asserts that he was denied access to the law library by the Department of Correctional Services between the dates of July 17, 2004 and July 24, 2004.  (Docket No. 16 at 9).  However, in general, the difficulties attendant to prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary circumstances. Amante v. Walker, 268 F.Supp.2d 154, 158 (E.D.N.Y.2003) (citing Lindo v. Lefever, 193 F.Supp.2d 659, 663 (E.D.N.Y.2002)); Martinez v. Kuhlmann, 1999 WL 1565177 at *5 (S.D.N.Y. Dec.3, 1999) (noting various circumstances not eligible for equitable tolling, including lack of English language proficiency and lack of aid in research); See Cross v. McGinnis, No. 05 Civ. 504(PAC), 2006 WL 1788955, at *4 (S.D.N.Y. June 28, 2006) ("restricted access to library facilities does not merit equitable tolling"); Francis v. Miller, 198

F.Supp.2d 232, 235 (E.D.N.Y.2002) (limited access to legal assistance is not so extraordinary to merit equitable tolling).  Here, Petitioner had ample time to perfect his application prior to the expiration of the time period.  The fact that he may have been deprived of the opportunity to utilize the library facilities for a week in July does not constitute extraordinary circumstances.

Accordingly, Petitioner is not entitled to equitable tolling on the basis of a denial of access to the law library. Therefore, it is recommended that the petition for habeas corpus relief be DISMISSED.

## IV. CONCLUSION

For the reasons stated above, the Court recommends David Luck's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that the Petition be dismissed.  Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue.  See 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:      March 17, 2008

Syracuse, New York

**V. ORDERS**

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840

14

F.2d 985 (1st Cir. 1988).

SO ORDERED.

 March 17, 2008

Victor E. Bianchini
United States Magistrate Judge